WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Shalom Hunter, | No. CV-14-2018-TUC-DTF |
| Petitioner, | **ORDER** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Petitioner Brian Hunter, presently incarcerated at the Arizona State Prison-Central Unit, in Florence, Arizona, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Amended Petition (Doc. 8), Respondents' Answer (Doc. 12) and Petitioner's Reply (Doc. 13). Petitioner also filed a supplement to his petition, attaching an exhibit for the Court's consideration. (Doc. 18.) Respondents did not oppose the supplement, but responded with two additional exhibits. (Doc. 19.) Pursuant to Court order, Respondents filed the trial transcripts. (Doc. 22.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 12.)

## FACTUAL AND PROCEDURAL BACKGROUND

Hunter was convicted in the Superior Court of Pima County of two counts of selling or transferring a narcotic drug, one count of possessing a narcotic drug for sale, and one count of possessing drug paraphernalia. (Doc. 12, Ex. B.) On November 10, 2010, he was sentenced to four concurrent sentences, the longest of which were fourteen years. (*Id.*)

The convictions were based on the following facts, as summarized by the appellate court:

> Hunter was charged with six drug offenses based on a series of drug sales to an undercover police detective, Christina Hearn, and a resulting search of his apartment pursuant to a warrant.
>
> Counts one and two alleged Hunter had sold or transferred cocaine base, a narcotic drug, on two different days in April 2008. Detective Hearn testified that her investigation began that month after she received "a phone number that was associated with . . . Brian Hunter, also known as Goldie, who was suspected of selling crack cocaine." The detective called Goldie at the number provided and arranged to meet "his driver" at a gasoline station to buy narcotics. There, she met Hunter's codefendant Alan Culver, and she twice purchased "crack cocaine" from him.
>
> Count three alleged Hunter had sold or transferred cocaine base on May 16, 2008. On this day, Detective Hearn again called Goldie using the same telephone number and arranged to meet him at a different gas station. This time, Hunter drove to the gas station in a convertible, and he personally sold cocaine base to the detective while another man sat in the back seat of the vehicle. The detective testified that during this encounter she recognized Hunter as Goldie from his voice.
>
> Count four alleged Hunter had sold or transferred cocaine base on June 19, 2008. On that day, Detective Hearn called Goldie using the same number and arranged to purchase narcotics at an apartment. Hearn was still connected on a call to Goldie as she approached the apartment, and, once there, she saw Hunter outside talking to her on the telephone; she then followed him into the apartment. Hunter sat on a couch in the living room of the one-bedroom apartment, and he told the detective that the cocaine she wanted was on the living room table. The detective gave Hunter a $100 bill and left with the bag of narcotics.
>
> Count five alleged Hunter had possessed cocaine base for sale on June 19, 2008, and count six alleged that on the same date he had possessed drug paraphernalia described as "a scale and/or baggies and/or pill bottles." As Hunter acknowledges in his opening brief, these two charges were based on evidence seized from the same apartment later that day, after the sale to Detective Hearn had already occurred. Inside the apartment, law enforcement officers discovered cash hidden beneath a cushion of the living room couch; they found a plastic pill bottle containing cocaine base in the pocket of a jacket hanging in the living room closet; and they discovered more cash, pill bottles, and cocaine base in the kitchen cabinets, along with a digital scale and small plastic bags. Officers learned the apartment was leased to Alan Culver, but they discovered utility bills to the residence in Hunter's name. Hunter also told Detective Hearn that he usually could be found in the apartment between 10:00 and 11:00, and he possessed a key to it that officers observed him use.
>
> The jury failed to return a verdict on counts one and two, and the trial court later dismissed these charges with prejudice.

(Doc. 23, Ex. G at 2-3.)

Hunter filed an appeal, and the Arizona Court of Appeals affirmed his convictions and sentences. (*Id.*, Exs. C, F.) Hunter's request for review in the Arizona Supreme Court was denied. (*Id.*, Exs. G, I.) Hunter did not seek post-conviction relief.

## DISCUSSION

Hunter raises nine claims in his Petition. Respondent does not contest the timeliness of the Petition but contends Claims 1, 2, 3, 4, 6, 8, and 9 are procedurally defaulted. The Court will first examine exhaustion and then will address the merits of any remaining claims.

### PRINCIPLES OF EXHAUSTION AND PROCEDURAL DEFAULT

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be

pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**ANALYSIS OF PROCEDURAL DEFAULT**

Respondent argues that claims 1-4, 6, 8, and 9 are procedurally defaulted.

**Claims 1, 2, 3, 8, and 9**

In Claim 1, Hunter alleges he was denied his constitutional right to a preliminary hearing. In Claim 2, Hunter alleges malicious prosecution in bringing the criminal case against him. In Claim 3, Hunter alleges the trial court erred in allowing a cell phone as evidence against him because it was never connected to him. In Claim 8, Hunter alleges it was error to use his 1999 felony to enhance his sentence. In Claim 9, Hunter alleges he was entitled to the benefit of the Fair Sentencing Act of 2010.

Hunter contends that he has attempted to raise all of his claims at each level in state court and has been thwarted by counsel and the courts. Hunter's efforts to represent himself on appeal, or to have hybrid representation, are evidenced by several documents filed by the parties. (Doc. 12, Ex. F at 2 n.1; Doc. 18, Attach. 1; Doc. 19, Exs. A, B.) These efforts ultimately were unsuccessful. In its opinion on Hunter's appeal, the Arizona Court of Appeals denied Hunter hybrid representation. (Doc. 12, Ex. F at 2 n.1.) The Court noted that it initially had allowed Hunter to file a pro se supplemental

- 4 -

memorandum; however, the Court determined that decision was improvident and did not consider the issues Hunter had raised on his own behalf. (*Id.*)

Exhaustion requires that a claim have been fairly presented in a procedurally appropriate manner before the court of appeals. Because the appellate court determined that Hunter did not have the right to represent himself before that court, and the claims he raised were not properly before it, none of the claims he raised pro se were fairly presented in a procedurally appropriate manner. For purposes of exhaustion, this Court looks only at the claims raised in the appellate brief filed by appointed counsel.

As acknowledged by Hunter, Claims 1, 2, 8, and 9 were not fairly presented in a procedurally proper manner in the opening appellate brief. (Doc. 12, Ex. C.) Hunter asserts that Claim 3 was raised to the appellate court, but it is not included in the brief filed by counsel. (Doc. 12, Ex. C.) If Hunter were to return to state court now to litigate these claims, they would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because they do not fall within an exception to preclusion. Ariz. R. Crim. P. 32.2(b); 32.1(d)-(h). Therefore, Claims 1, 2, 3, 8, and 9 are technically exhausted but procedurally defaulted.[1]

Because the Court retains jurisdiction to review unexhausted claims, it has considered doing so in light of the unique circumstances of this case. It appears that Hunter made every effort to raise these claims. Hunter has stated numerous times that he asked counsel to assert these claims and counsel refused. Hunter requested, and the appellate court granted him, the right to file a supplemental pro se brief. Only upon

---

[1] Claims 3 and 8 also are not cognizable. Relief in this Court is available for a person convicted in state court only if the person is in custody in violation of the federal constitution or a law of the United States. 28 U.S.C. § 2241(c)(3). As to Claims 3 and 8, Hunter has not alleged a violation of federal law in his Petition nor did he cite any law illuminating a federal issue. Additionally, Claim 9 requests that this Court apply the Fair Sentencing Act of 2010. As acknowledged by Hunter, this law applies only to criminal actions in federal court and has no applicability to Hunter's state court convictions.

issuing its final ruling on his appeal did the court notify Hunter that it would disregard the issues he had raised on his own behalf. At this time, it was too late for Hunter to pursue any other avenues for having these claims heard on appeal. Hunter had, however, one remaining avenue for relief. He could have filed a post-conviction relief petition raising ineffective assistance of appellate counsel based on a failure to raise these claims. Hunter did not do so. Because Hunter had a tool available to pursue relief and did not employ it, the Court has determined that it will not consider his procedurally defaulted claims, absent cause and prejudice or a miscarriage of justice.

**Claims 4 and 6**

In Claim 4, Hunter alleges it was error for the trial court to admit defendant's financial disclosure form at trial without prior disclosure by the prosecution. In Claim 6, Hunter alleges his right to a fair trial was violated by the denial of a mere presence jury instruction. Respondents argue that Claims 4 and 6 were not fairly presented as claims based on federal law in state court.[2]

In his opening brief on appeal, Hunter alleged as to Claim 4 that he was "denied his due process right to a fair trial and to present a defense under the Sixth and Fourteenth Amendments to the United States Constitution." (Doc. 23, Ex. C at 21.) As to Claim 6, he alleged that denial of a mere presence instruction "deprived the Appellant of his constitutional right to a jury determination of the facts, and to his due process right to a fair trial, in violation of the Sixth and Fourteenth Amendments to the United States

---

[2] In Claim 4, Hunter alleges in the Petition only that the trial court abused its discretion, which prejudiced the defendant. (Doc. 1 at 9.) And, in Claim 6 of the Petition, Hunter makes only a general reference to his constitutional right to a fair trial, while arguing the claim should be reviewed for an abuse of discretion. (*Id.* at 11.) Relief in this Court is available for a person convicted in state court only if the person is in custody in violation of the federal constitution or a law of the United States. 28 U.S.C. § 2241(c)(3). Federal courts review only for constitutional violations not an abuse of discretion. *See Williams v. Borg*, 139 F.3d 737, 740 (9th Cir. 1998). In Claims 4 and 6, Hunter fails to allege a clear violation of federal law in his Petition. However, because Respondents did not raise this issue and Hunter would be able to amend to allege a violation of his right to due process, the Court does not dismiss the claims on this basis. Rather, the Court treats them as due process claims, as they were exhausted in state court on that basis.

Constitution." (*Id.* at 10-11.) Respondents rely upon the case of *Castillo v. McFadden*, 399 F.3d 993 (9th Cir. 2004), to argue that Hunter did not fairly present these claims in state court. *Castillo* is distinguishable. In that case, the petitioner failed to mention the Fourteenth Amendment Due Process Clause and merely made one reference to the denial of a fair trial under the Constitution. *Id.* at 1000-01. In contrast, Hunter mentioned the Constitution in his caption for each claim and, in the body of the argument, stated the amendments upon which he was relying. (Doc. 23, Ex. C at 9, 11, 17, 21.) This was sufficient to fairly present the federal constitutional claims to the Arizona Court of Appeals. The Court will consider these claims on the merits.

**Cause and Prejudice**

In his Reply, Hunter contends appellate counsel was ineffective for failing to raise his claims properly before the state appellate court. The Court reads this as an argument for cause to excuse the procedural default of Claims 1-4, 6, 8, and 9.

Before ineffectiveness may be used to establish cause for a procedural default, it must have been presented to the state court as an independent claim. *Murray v. Carrier*, 477 U.S. 478, 489 (1986). Petitioner never alleged in state court ineffective assistance by his appellate counsel for failing to raise any claims. Ineffectiveness claims regarding counsel are now foreclosed in state court by Arizona Rule of Criminal Procedure 32.2(a)(3) and 32.4(a). Because the Arizona state courts have not had a fair opportunity to rule on Petitioner's ineffectiveness claims alleged as cause, and Petitioner may not exhaust these claims now, they are technically exhausted but procedurally defaulted. *See Gray*, 518 U.S. at 161-62; *Coleman*, 501 U.S. at 735 n.1. Therefore, Petitioner's allegations of ineffective appellate counsel cannot constitute cause to excuse the defaults. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (ineffective counsel as cause can itself be procedurally defaulted).

**Fundamental Miscarriage of Justice**

In his Reply, Hunter disputes Respondents' position that he is not claiming actual innocence. Therefore, the Court will evaluate whether he has established a fundamental miscarriage of justice to overcome the procedural defaults.

To demonstrate a fundamental miscarriage of justice to excuse a procedural default, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). To establish the requisite probability, the petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. The Supreme Court has characterized the exacting nature of an actual innocence claim as follows:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Id.* at 324; *see also House v. Bell*, 547 U.S. 518, 538 (2006).

Hunter has not provided any new reliable evidence to support a claim of actual innocence. Therefore, he cannot establish that there has been a fundamental miscarriage of justice.

**LEGAL STANDARDS FOR RELIEF UNDER THE AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reducing delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "highly deferential standard for evaluating state-court rulings' . . . demands that state-court decisions be given the benefit of the doubt."

*Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3,

8 (2002) (per curiam). In characterizing the claims subject to analysis under the "contrary to" prong, the Court has observed that "a run-of-the-mill state-court decision applying the correct legal rule to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406; *see Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004).

Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Landrigan*, 550 U.S. at 473; *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (Miller-El I); *see Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting

this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**ANALYSIS OF MERITS**

**Claim 4**

Hunter alleges it was error, in violation of due process, for the trial court to allow the State to use the defendant's financial disclosure form without disclosing it to the defense prior to trial. The appellate court summarized the relevant facts as follows:

> At trial, the state presented evidence that the police first contacted Hunter using the telephone number for Goldie, which was 358-9094. On the financial affidavit Hunter had filed in this case to receive court-appointed counsel, he provided the same number as his own telephone number. When defense counsel asked questions during trial suggesting this telephone number belonged to someone else, the court informed counsel of the financial affidavit in the court's file, and it later granted the state's motion to take judicial notice of this document . . . .

(Doc. 12, Ex. F at 7-8.) The court of appeals rejected this claim, holding that a court may take judicial notice sua sponte, therefore, it does not depend upon a party's disclosure of the document. (*Id.* at 9-10.) Next, the court held that a disclosure sanction, if any, is at the court's discretion and does not require preclusion of the evidence. (*Id.* at 10.) Finally, the court found that there was no evidence the prosecutor had the document within its "possession or control," such that disclosure was required under the rules. (*Id.*) Additionally, Hunter failed to show how his ability to defend was impaired, as he knew all along that the phone number was at issue. (*Id.* at 11.)

The admission of evidence is a state law matter outside the province of the federal courts, and only if the admission of the evidence was so prejudicial as to offend due process may this Court consider it on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

Hunter's argument in his Petition is that the phone attached to the number at issue did not belong to him and was never found in his possession, he listed it only as a number at which he could be reached. He then contends the state used the document, at the last minute, to try and tie the phone to him but there was no evidence to support such a

- 11 -

connection. These arguments fail to establish that admission of the document offended due process, even though he had minimal notice. Hunter is really arguing that there was insufficient evidence, even with the financial disclosure form, to connect him with that phone number. He was free to argue that at trial and counsel did contend in closing arguments that the number was registered to someone else and that others had access to the phone. (Doc. 22, Ex. 5 at 39, 41.) Prior to the admission of the financial affidavit, Hunter knew the phone number would be at issue in the trial. Further, Hunter voluntarily listed that phone number on the form and had as much access to that document as the State. Use of the financial disclosure form was not so prejudicial as to offend due process. The state court's denial of this claim was not objectively unreasonable.

**Claim 5**

Hunter alleges there was insufficient evidence to support his conviction for possession of a narcotic drug for sale and possession of drug paraphernalia (counts 5 and 6). In particular, he contends the State failed to establish he had dominion and control over the residence in which those items were found.

The court of appeals found the following facts would allow a juror to infer that "Hunter used the apartment for drug sales and that he knew of and constructively possessed the illegal items found inside":

> As Hunter acknowledges, utility bills to the apartment were found in his name. Hunter also had a key to the apartment and locked the door upon leaving. Furthermore, he completed a drug transaction in the apartment with Detective Hearn, and he told her he usually could be found there for one hour every day.

(Doc. 12, Ex. F at 18.)

On habeas review, the "rational factfinder" standard is used to determine whether there is sufficient evidence to support a state court's finding of the elements of the crime. *See Lewis v. Jeffers*, 497 U.S. 764, 781 (1990). The question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson*

- 12 -

*v. Virginia*, 443 U.S. 307, 319 (1979). A habeas court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id*. at 326; *see also Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (per curiam). This type of claim is properly analyzed under the deferential standard of § 2254(d)(1); thus, the Court asks whether it was an objectively unreasonable application of *Jackson* for the Arizona Court of Appeals to deny this claim. *See Sarausad v. Porter*, 479 F.3d 671, 677-78 (9th Cir.), *vacated in part on other grounds*, 503 F.3d 822 (9th Cir. 2007).

Hunter contends there was insufficient evidence that he had knowing possession of the drugs and paraphernalia found in the apartment. A person has constructive possession of an item if it can be inferred the person had knowledge of the property and dominion or control over the area where it was found. *State v. Cox*, 155 P.3d 357, 359, 214 Ariz. 518, 520 (Ct. App. 2007). Based on the trial evidence cited by the appellate court – Hunter sold drugs out of the apartment, he had a key, and the utilities were in his name – a rational juror could have found that Hunter had constructive possession of the items in the apartment. It was not objectively unreasonable for the court of appeals to deny this claim.

**Claim 6**

Hunter alleges his right to a fair trial was violated by the denial of a mere presence jury instruction as to count 3. The instruction proposed by trial counsel was a standard instruction from the Revised Arizona Jury Instructions (Doc. 22, Ex. 3 at 180), which provides:

> Guilt cannot be established by the defendant's mere presence at a crime scene, mere association with another person at a crime scene or mere knowledge that a crime is being committed. The fact that the defendant may have been present, or knew that a crime was being committed, does not in and of itself make the defendant guilty of the crime charged. One who is merely present is a passive observer who lacked criminal intent and did not participate in the crime.

The appellate court found that a mere presence instruction was not warranted because, based on the following trial evidence, Hunter was not a passive observer:

> [T]he detective testified she had met Hunter at a gas station and had knelt down to have a conversation with him "at the driver's side window – or driver's side door" of the convertible he was driving. Hunter told the detective to take a small bag of drugs from the driver's side door panel. She then reached in and removed a bag of cocaine base, leaving a $100 bill in its place.

(Doc. 12, Ex. F at 13.) The appellate court found no error by the trial court and rejected Hunter's speculative argument that the jury could have disbelieved the detective's testimony and have concluded the back seat passenger had arranged the transaction. (*Id.*) The court further found that, even if another person had arranged the transaction, Hunter was personally involved. (*Id.*)

Due process requires that a jury instruction be given only when the evidence warrants it. *Hopper v. Evans*, 456 U.S. 605, 611 (1982). This Court examines only whether the denial of the instruction so infected the entire trial as to render it fundamentally unfair. *Estelle*, 502 U.S. at 72; *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).

The Court has reviewed the trial transcripts and finds that the evidence did not warrant a mere presence instruction. Detective Hearn testified that Hunter, as the driver of the vehicle, nodded to her to walk over to his car; she knelt down at the driver's side door. (Doc. 22, Ex. 3 at 44, 135.) Detective Hearn stated that Hunter questioned who she was and who she was with when they met.[3] (*Id.* at 44, 46, 47.) After his inquiry, Hunter looked down at the driver's side interior door handle where there was a baggie with suspected crack cocaine in it and told her to grab it. (*Id.* at 46-47, 136.) Detective Hearn testified that she took the baggie and left a $100 bill in its place. (*Id.* at 47.) On cross-

---

[3] In the Petition, Hunter contends that Detective Hearn testified at trial that Hunter stated he did not know her. There was no trial testimony to that effect; rather, the detective stated that Hunter questioned her about their connection.

- 14 -

examination, Detective Hearn acknowledged there were two other people in the car at the time and she did not know who put the drugs in the door handle. (*Id.* at 121.) Deputy Sheriff Rudy Nicoechea testified that he witnessed Detective Hearn approach the car and speak with the driver, but he did not witness any head or hand movements by Hunter. (*Id.* at 144, 151.) Deputy Jesus Vivaldo was also present and did not observe Hunter make any overt gestures indicating a drug transaction. (Doc. 22, Ex. 4 at 61.) Deputy Nicoechea could not tell if Detective Hearn had contact with either of the passengers but it did not appear so to him. (Doc. 22, Ex. 3 at 152, 156.)

As found by the state court, the trial evidence established that Hunter was personally involved in the drug transaction charged in count 3. He was not a passive observer. He set up the transaction by telephone and told Detective Hearn to take the crack cocaine from the car. A jury could have chosen to disbelieve Detective Hearn, as argued by Hunter. However, there was no evidence presented at trial by which the jury could conclude that Hunter was merely present and the passengers in the vehicle set up the transaction and conducted it with Detective Hearn. Denial of a mere presence instruction did not render Hunter's trial fundamentally unfair. The state court's denial of this claim was not objectively unreasonable.

**Claim 7**

Hunter alleges counts 4 and 5 of the indictment are multiplicitous and violate the Double Jeopardy clause. Count 4 alleged sale or transfer of a narcotic drug and count 5 alleged possession of a narcotic drug for sale, both of which occurred on the same date. Hunter contends that a person cannot transfer a drug without first possessing it, therefore, it is a single act for which he can suffer only one conviction.

The appellate court found the charges were not multiplicitous based on the following facts:

> [C]ount four was based on the cocaine base Hunter actually sold to Detective Hearn for $100 in his apartment, whereas count five was based on Hunter's possession of other cocaine base in the residence. The cocaine sold to the detective was contained in a plastic bag lying in plain view on

- 15 -

> the living room table; the other cocaine was stored in a kitchen cabinet, much of it inside a plastic pill bottle, as well as inside a pill bottle in the pocket of a jacket hanging in a closet. Given the separate packaging and locations of the drugs, a conviction on one charge would not logically require a conviction on the other.

(Doc. 12, Ex. F at 15.)

The double jeopardy clause protects against multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). "Often a course of criminal conduct will entail the violation of several statutes. In those cases, if the statutes are not redundant, the prosecutor may charge the defendant with violating one or all of the statutes, and the defendant can be convicted of violating more than one statute." *United States v. Duncan*, 693 F.2d 971, 975 (9th Cir. 1982). "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If each statute requires proof of an additional fact the charges are not multiplicitous. *Morey v. Commonwealth*, 108 Mass. 433, 434 (1871).

Hunter contends he cannot be convicted for both possessing and transferring the same narcotic drug because the transfer necessarily requires possession. As pointed out by the appellate court, counts 4 and 5 involved different drugs found in different locations. As to count 4, Hunter was convicted for selling cocaine base to an undercover agent. He was not charged with possessing that cocaine. Rather, the possession charge was based on other cocaine found at a later time within the apartment. Therefore, these charges were not multiplicitous. Denial of the claim was not objectively unreasonable.

### CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This

showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the court's procedural ruling was correct. *Id.* The Court finds that reasonable jurists would not find this Court's procedural rulings debatable nor could they debate that the merits of any claim should have been resolved differently. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 29th day of October, 2014.

D. Thomas Ferraro
United States Magistrate Judge